**WOO KING–HSUN v. PEMBERTON & PENN, Inc.\***

No. 6967.

Circuit Court of Appeals, Ninth Circuit.

Sept. 6, 1933.

*Rehearing denied October 30, 1933.

Fessenden and Holcomb, of Shanghai, China, and Chickering & Gregory, Donald Y. Lamont, and Frederick M. Fisk, all of San Francisco, Cal., for appellant.

Schuhl & Lurton, of Shanghai, China, and Pillsbury, Madison & Sutro, Alfred Sutro, and Eugene M. Prince, all of San Francisco, Cal., for appellee.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

SAWTELLE, Circuit Judge.

This is an appeal from a judgment in favor of appellee, defendant below, on its counterclaim in an action brought by appellant to recover damages for alleged breach by appellee of a contract of agency and to recover from appellee certain other moneys, alleged to be due and owing to appellant. The amount of the counterclaim offset the amount of damages claimed by appellant. The nature of the counterclaim and the transaction out of which it arose will be more fully described hereinafter.

The contract of agency between the parties commonly known as a compradore agreement, was executed on February 15, 1931, and provided that appellant and one Zar Dong-Zsu, appellant's partner, both citizens of China, would act as compradores, or commission merchants, on behalf of appellee, an American corporation doing business in China, for the sale of the latter's tobacco in China, on a commission basis, for a period of one year from the date of the agreement.

Various pertinent provisions of the contract are as follows: "The compradores shall undertake to further to the fullest extent of their ability the business of the Company in leaf tobacco of all grades and descriptions in which the Company does or may deal." "The compradores do hereby authorize each other as their duly accredited and rightful agents in all dealings with the Company, and the signature of either of the compradores shall be binding upon both of the compradores in all future dealings with the Company." "The compradores shall not be interested in the sale of any American leaf tobacco other than that of the Company, and shall devote their entire

time and energy to the sale of the leaf tobacco of the Company, to the exclusion of all other interests." "This agreement may be only terminated after three (3) months notice in writing is given by one party to the other party."

The compradores also agreed to "assume full responsibility for payment of all accounts due to the Company from native buyers to whom they have sold goods of the Company for the account of the Company and whose memorandum of purchase they have guaranteed to the Company." Certain sums were deposited with appellee by the compradores "as security for the fulfillment and correct performance by the compradores and of all customers introduced and/or guaranteed by them to the Company hereunder and of all the terms, covenants and conditions and obligations of this agreement by the compradores to be kept, fulfilled, performed and observed."

The contract was terminated by appellee on September 28, 1931, after notice of such intention was given to the compradores on July 15, 1931.

In October, 1931, Zar Dong-Zsu, the partner, assigned to appellant all of his right, title, and interest in the contract with appellee.

Appellant then brought this action against appellee to recover specific damages for alleged breach of the contract and to recover the moneys deposited with appellee for the faithful performance of the contract, as well as certain unpaid salaries and commissions.

In its answer, appellee denied that it had breached the contract, but admitted its liability to account for the deposit received by it from the compradores to guarantee the faithful performance of the contract. On the trial appellee also admitted its liability for the unpaid salaries and commissions sought by the complaint.

By way of counterclaim, however, appellee alleged that the compradores are indebted to appellee in excess of any sum due them, by reason of a certain sale of sixty hogsheads of tobacco to the Hwa Ching Tobacco Company, for which payment had not been received, the indebtedness therefor being chargeable against the guaranty deposited by the compradores.

The court, sitting without a jury, rendered judgment in favor of appellee on its counterclaim, in full settlement and satisfaction of appellant's claim.

An additional counterclaim filed by appellee was dismissed by the court for insufficiency of the evidence to support it, and it is not involved here.

Neither is appellant's unsuccessful claim for specific damages for alleged breach of the contract by appellee here involved.

■ The only issue here relates to the holding of the court in allowing appellee's counterclaim as a set-off against the moneys deposited with appellee by the compradores to secure the faithful performance of the contract and to insure appellee against any loss resulting from a sale made pursuant to the agreement.

The findings of the court in connection with the counterclaim are as follows:

"That on or about the 20th day of July, 1931, Zar Dong-Zsu, acting under and pursuant to the compradore agreement, undertook to sell sixty hogsheads of defendant's tobacco to the Hwa Ching Tobacco Company, a local concern.

"That Zar Dong-Zsu at the time of such undertaking, to-wit, on July 20, 1931, requested Burnett, the then acting general-manager of defendant's business in Shanghai, that he, Burnett, should say nothing to Zar's co-compradore, Woo King-Hsun, with respect to the proposed sale of the sixty hogsheads of tobacco to the Hwa Ching Tobacco Company, to which said proposal Burnett agreed.

"That thereafter Zar Dong-Zsu represented to Burnett, as the general-manager of the defendant, that he, Zar Dong-Zsu, had obtained a contract from the Hwa Ching Tobacco Company for the purchase of the sixty hogsheads of tobacco from the defendant, whereupon the sixty hogsheads of tobacco were delivered by order of the defendant to the warehouse of the Hwa Ching Tobacco Co.

"That thereafter, in some manner not fully disclosed by the evidence, the sixty hogsheads of tobacco which had been delivered by the defendant to the warehouse of the Hwa Ching Tobacco Company got into the possession of Zar Dong-Zsu and were by him converted to his own use, and that the defendant has never received payment for the same."

It appears from the record that the reason given by Zar Dong-Zsu to Mr. Burnett, the manager of appellee, for requesting that the proposed sale to the Hwa Ching Company be kept secret from appellant, was that "they [Hwa Ching Company] were not friendly towards Mr. Woo [appellant], and if he knew he might go down and spoil the sale." Burnett, and other of appellee's employees, agreed not to let appellant know about the

transaction, and they took precautions to keep it secret from him.

Delivery orders were issued directing that the tobacco be sent to the warehouse of Hwa Ching Company. Thereafter Hwa Ching Company refused to pay therefor, claiming that it had neither ordered nor received the tobacco. Whether or not such is the fact is immaterial here. We are concerned only with the question whether the value of this tobacco was properly allowed as a set-off against the compradores' guaranty, or deposit. Unless, as contended by appellant, the evidence establishes fraud on the part of appellee in connection with the Hwa Ching Company transaction, the counterclaim was properly allowed.

Appellant contends that the reason for this secrecy on the part of appellee in regard to the Hwa Ching Company transaction was because appellee was about to close its office in China and it had on hand a quantity of tobacco which was unsuitable for the market there and difficult to dispose of; or, as argued in appellant's brief: "In other words, the defendant had worked out a plan so that it could dispose of its tobacco in an irregular way, but there was one hitch in its plan, to wit, both the defendant and Zar Dong-Zsu knew that the plaintiff would never consent to this transaction, in fact the defendant was told that by Zar Dong-Zsu, if it did not already know it, but the defendant's desire to consummate this transaction and dispose of its tobacco so that it could close out its business was too great; it decided to keep the transaction secret from the plaintiff, which it effectively did, having in mind all the time that if the irregular transaction did not work out by reason of bad faith on the part of either Zar Dong-Zsu or Koo [representative of the Hwa Ching Company], it could look to the deposit of the plaintiff."

Burnett, the manager of appellee, testified that he was familiar with the terms of the compradore agreement, and therefore he may be presumed to have known that by the agreement each of the compradores was authorized to act for the other. He was, of course, desirous of consummating the proposed sale to Hwa Ching Company, and, knowing that appellant might not consent thereto, he agreed not to divulge the transaction to appellant. Whatever other motive, if any, he may have had for agreeing to keep appellant in ignorance of the act of his partner, it is impossible to say without going outside the record before us and delving into the realm of inference and speculation; and this, we believe, is a sufficient answer to appellant's claim of fraud on the part of appellee, for it is well settled that

fraud may not be presumed, but must be established by clear and convincing proof. There is nothing in the record to justify a finding of fraud on the part of appellee in connection with the transaction upon which its counterclaim is based. Viewing the facts and circumstances disclosed by the record in the light most favorable to appellant's claim, they raise but an inference of fraud, and fall far short of the required degree of proof.

In view of the undisputed power of either compradore to act on behalf of the other in all transactions arising out of the compradore agreement, we fail to see any merit in the contention that the Hwa Ching Company transaction was fraudulent as a matter of law because Zar Dong-Zsu was, unknown to appellant, acting for both appellant and appellee in undertaking the transaction. Assuming that Zar Dong-Zsu violated his duty to appellant, or acted fraudulently in concealing the Hwa Ching Company transaction from him, it could not affect the defense of good faith interposed by appellee, in the absence, as we have seen, of any fraud on the part of the latter.

We cannot concur in appellant's contention that "prejudicial error occurred in the refusal of the court to permit plaintiff to state whether he would have permitted the sale to the Hwa Ching Tobacco Company to go through had he known of same." In this connection, we quote from appellant's testimony on direct examination:

"I had had dealings with the Hwa Ching Tobacco Company before I became connected with Pemberton & Penn; I was friendly with the Hwa Ching Tobacco Company.

"Q. In July of this year were your relations with the Hwa Ching Tobacco Company friendly or unfriendly? A. I do not know this business. I haven't done this business with Hwa Ching. * * *

"Q. Was the credit of that company good? A. Good, but I do not know this business.

"Q. In July of 1931 would you have been willing to extend credit to the Hwa Ching Tobacco Co? A. Of course willing but I do not know this transaction.

"Q. Are they prominent tobacco people. Are they big concern? A. This big concern.

"Q. And do a big business? A. Sure.

"Q. Buy lots of tobacco? A. Yes.

"Q. Sell lots of tobacco? A. Only buy tobacco.

"Q. Pay their debts so far as you know? A. Pay debts very good.

"Mr. Faison. Q. It has been testified here by Mr. Burnett that Mr. Zar did not want you to know about this transaction. Do you know of any reason why Mr. Zar should not have wanted you to know about this transaction? A. Because I have guarantee. I have money put up with Pemberton & Penn and they arranged with Mr. Burnett and Mr. Pattison not to let me know, keep secret. Mr. Burnett told Mr. Zar, 'Do not let Woo know.' He is afraid may be I want to collect money from Hwa Ching because I have guarantee money."

The finding of the court to the effect that Zar Dong-Zsu acted under and pursuant to the compradore agreement in undertaking the sale to the Hwa Ching Company was free from error.

We believe the remaining assignments of error to be without merit also. We are unable to perceive how any prejudice resulted to appellant from the refusal of the court to make a finding to the effect that at no time during his employment by appellee did appellant have knowledge of the proposed sale to the Hwa Ching Company. In view of the authority of either compradore to act on behalf of the other, it would seem that knowledge by appellant of the transaction in question is immaterial to his liability for the act of his partner.

Affirmed.

MACK, Circuit Judge, concurs in result.